IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LUIS GARCIA, §<br>    Appellant, § | **CIVIL ACTION NO. H-10-4829** |
| § | |
| v. § | Bankruptcy Case No. 07-37770 |
| § | Adversary No. 08-3203 |
| LOWELL T. CAGE, Trustee, § | |
|    Appellee. § | |

## **MEMORANDUM AND ORDER**

Adversary Defendant Luis Garcia appeals from the United States Bankruptcy Court's November 18, 2010 Memorandum Opinion Concerning Summary Judgment [Adversary Doc. # 50] and Final Judgment [Adversary Doc. # 51]. Appellant filed his Brief [Doc. # 5] and Appellee filed his Brief [Doc. # 7] thereafter. Appellant neither filed a reply nor requested additional time to do so. Having considered the parties' briefing, the designated bankruptcy record, and applicable legal authorities, the Court **affirms** the Bankruptcy Court's decision.

## I.   FACTUAL BACKGROUND

Debtors Marvin E. Moye, Joan Moye, and JMW Auto Sales Ltd., were in the used car business. Purchasers of vehicles from Debtors would often sign a Retail Installment Sales Contract ("Installment Contract") with "JMW Auto Sales" listed as the lienholder. Debtors purported to sell Installment Contracts to investors, who were referred to as "Pool Investors," including Appellant. The purported sale was the

subject of a "Master Purchase and Sale Agreement" ("Master Agreement"), which did not identify any specific Installment Contract being purchased and, instead, simply described the ongoing relationships among the parties with respect to any Installment Contract that might be purchased from time to time.

After an investor signed the Master Agreement, Debtors would assemble a pool of Installment Contracts with an aggregate current balance equal to the amount the investor agreed to invest. Debtors did not endorse any Installment Contracts to the Pool Investors, and Debtors did not execute any separate document transferring rights in any specific Installment Contract to the Pool Investors. Debtors did not modify the vehicle title to identify the Pool Investors as holders of a security interest in the vehicle, and JMW Auto Sales remained listed on the certificate of title as the lien holder.

The purchasers of the vehicles were not notified when their Installment Contracts were allegedly assigned to the Pool Investors. The Pool Investors did not file UCC-1 forms to perfect any security interest they may have obtained in the Installment Contracts or in any stream of payment due under the Installment Contracts.

After an Installment Contract was allegedly transferred to a Pool Investor, Debtors continued to service the note, collect payments, and repossess vehicles in case

of default. The Master Agreement provided for the execution of servicing agreements, but none were ever executed.

The Master Agreement provided that, if a vehicle purchaser defaulted under the Installment Contract, Debtors were required to substitute a different Installment Contract for the one in default. Debtors did not forward amounts collected under a specific Installment Contract to the Pool Investor to whom that contract was allegedly transferred. Moreover, when the amount collected under a pool of Installment Contracts was less than the amount due to the Pool Investor, Debtors used other funds to pay the Pool Investors the full amount they were owed.

In 2007, Debtors were unable to continue making payments to the Pool Investors. Debtors and some Pool Investors agreed that the Installment Contracts should be sold to a third party. Mid-Atlantic Finance Company ("Mid-Atlantic") agreed to purchase the Installment Contracts at a discounted value. The contracts with Mid-Atlantic were in Debtors' name with no representation that they were acting in an agency or other representative capacity.

Some of the funds received from Mid-Atlantic were transferred to the Pool Investors. Those transfers were made within ninety (90) days of the October 31, 2007, filing of an involuntary bankruptcy petition against JMW Auto Sales, and the November 6, 2007, voluntary bankruptcy petition filed by Debtors Marvin and Joan

Moye. As a result, the Trustee sought to recover those payments as preferential transfers pursuant to 11 U.S.C. § 547.[1]

The Trustee moved for summary judgment on the § 547 claim. On November 18, 2010, the Bankruptcy Court granted the Trustee's motion. This appeal followed.

## II.   STANDARD OF REVIEW

The Bankruptcy Court's summary judgment ruling is reviewed *de novo*. *See In re OCA, Inc.*, 552 F.3d 413, 419 (5th Cir. 2008). This Court reviews the record to determine whether there are genuine issues of material fact and whether the prevailing party was legally entitled to summary judgment. *See Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 352 (5th Cir. 2008) (citing *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 328 (5th Cir. 2007)).

"This Court may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *In re Scotia Pacific Co., LLC*, 508 F.3d 214, 218-19 (5th Cir. 2007) (quoting *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 245 (5th Cir. 2006)).

---

[1] The Trustee asserted other bases for recovery of the payments, but the Bankruptcy Court's ruling is based on the payments being recoverable by the Trustee as preferential transfers under § 547.

## III. ANALYSIS

The Bankruptcy Code allows the trustee to avoid any transfer (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made within 90 days before the date a bankruptcy petition was filed; and (5) that enables the receiving creditor to receive more than it would otherwise receive. *See* 11 U.S.C. § 547(b). In this case, the uncontroverted evidence establishes that the challenged transfer to Appellant was made within 90 days before the bankruptcy petitions were filed and that the transfer enabled Appellant to receive more than he would otherwise have received. There is a presumption that the debtor was insolvent during the 90-day period immediately preceding the date the bankruptcy petition was filed. *See* 11 U.S.C. § 547(f). The Trustee presented independent evidence to establish insolvency, and Appellant did not present competent summary judgment evidence that rebutted the Trustee's evidence or the presumption.[2]

Appellant argues that the transfer was not made to it as a creditor for or on account of an antecedent debt. According to Appellant, the transfer was the proceeds of the sale to Mid-America of the Installment Contracts owned by Appellant and sold

---

[2] Appellant presented the affidavit of Debtor Marvin Moye, who stated that his accountant prepared an income statement and balance sheet for the six-month period ending June 30, 2007. This evidence, however, predates the relevant time period for the Trustee's § 547 claim, which is August through October 2007 (the ninety-day period before the bankruptcy petitions were filed). As a result, the evidence presented by Appellant does not rebut the § 547(f) presumption of insolvency.

by Debtors as Appellant's agent. Appellant's evidence does not, however, raise a genuine issue of material fact in support of this argument.

As an initial matter, the Bankruptcy Court correctly held that the purported transfer of the Installment Contracts to Appellant was void because it violated Texas law. The Texas Finance Code requires holders of vehicle retail installment contracts to be licensed by the State. *See* TEX. FIN. CODE § 348.501(a). It is undisputed that Appellant is not licensed. Therefore, under Texas law, Appellant did not have proper legal authority to own the Installment Contracts and any purported transfer of such contracts to him would be void.[3] *See Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947); *Jack v. State*, 694 S.W.2d 391, 397 (Tex. App. – San Antonio 1985, writ ref'd n.r.e.). Because any attempt to transfer the Installment Contracts to Appellant was invalid, Appellant did not own the Installment Contracts for purposes of the § 547 analysis. Instead, Appellant invested money with Debtors and thus became creditors of Debtors before the bankruptcy petitions were filed. Based on the uncontroverted summary judgment evidence and the applicable law, the transfer to Appellant of funds

---

[3] Appellant argues that (1) the Trustee did not have standing to assert a claim under the Texas Finance Code, (2) the Trustee could prevail on the Texas Finance Code claim only if he convinced the Bankruptcy Court that the statute was void and meaningless, and (3) that the Trustee did not have a private right of action under the Finance Code. *See* Appellant's Brief, pp. 4-5. The relevance of the Texas Finance Code to the Bankruptcy Court's ruling was not as a separate cause of action but, instead, as a basis for holding that the Installment Contracts were not validly transferred to Appellant such that he owned them.

received by Debtors from Mid-America to Appellant constituted a transfer to or for the benefit of a creditor for or on account of an antecedent debt. The Bankruptcy Court correctly held that there was no genuine issue of material fact and that the Trustee was entitled to summary judgment on the § 547 claim.

Appellant argues also that the Master Agreement defined the relationship between the parties as the sale of commercial paper, that the payment streams from the Installment Contracts were not property belonging to the estate, and that the money paid by Mid-America belonged to Appellant and not to Debtors. In addition to the invalidity of the purported sale of the Installment Contracts to Appellant because he is not licensed to be a holder of such contracts, Appellant's argument is not supported by the record. The Master Agreement's characterizations of the status of the parties is not controlling[4] and is refuted by the actual conduct of the parties. The Master Agreement does not itself transfer any rights but, instead, indicates that the parties intend to transfer Installment Contracts in the future. There is no evidence of the actual transfer of any particular Installment Contract. Debtors did not endorse any

---

[4] *See e.g., In re Sachman Mortg. Corp.*, 158 B.R. 926, 933 (Bkrtcy. S.D. N.Y. 1993), noting that the most significant factor in deciding whether a transaction is a loan or a sale is the risk allocation, and stating that "agreements whereby the participant bears no risk of loss constitute debtor-creditor relationships in the form of loans. . .." *Id.* (citing *In re Woodson Co.*, 813 F.2d 266, 271 (9th Cir. 1987)). *See also Dixon v. Burman*, 593 F. Supp. 6, 9 (N.D. Ind. 1983), holding that a contract designation is not a binding determination of the party's status.

specific Installment Contracts to Appellant, and they did not modify the vehicle titles to identify Appellant as a holder of the security interest in that specific vehicle. JMW Auto Sales remained the lien holder on the certificate of title. The parties never executed a schedule identifying specific Installment Contracts transferred to Appellant, the vehicle owners were never informed of the purported transfer of their Installment Contract to Appellant, and Appellant did not file a UCC-1 to perfect a security interest in any Installment Contract or its stream of payments. There was no servicing agreement for Debtors to service the Installment Contracts for Appellant, yet Debtors continued to service the Installment Contracts. Appellant had no financial risk of default by any vehicle purchaser because the Master Agreement required Debtors to substitute another Installment Contract for any defaulted one. Debtors paid Appellant a fixed amount, regardless of the amount actually collected under the Installment Contracts. If insufficient collections were made, Debtors paid Appellant the full amount from other funds. The funds from the Installment Contracts were commingled with other funds in Debtors' possession. Importantly, Debtors' contract with Mid-America did not disclose that Debtors claimed to be acting in any agency or other representative capacity for Appellant.

The Bankruptcy Court correctly held that there was no genuine issue of material fact that, notwithstanding the characterizations in the Master Agreement, Debtors did

not transfer ownership of the Installment Contracts to Appellant and the other Pool Investors.

Appellant's final arguments on appeal are that the Trustee did not offer evidence of a "fraudulent transfer" or of "unjust enrichment." The Bankruptcy Court entered summary judgment in the Trustee's favor only on the § 547 claim. The Bankruptcy Court did not rule that the transfers were fraudulent or on any "unjust enrichment" claim.[5]

## IV.  CONCLUSION

Having reviewed the full record in this case and having applied governing legal authorities, the Court concludes *de novo* that the Bankruptcy Court's summary judgment in favor of Appellee on the § 547 preference claim was correct in all respects. Accordingly, the Bankruptcy Court's Memorandum Opinion and Final Judgment are **AFFIRMED**. The Court will issue a separate final order.

SIGNED at Houston, Texas this 6th day of **April, 2011**.

_____
Nancy F. Atlas
United States District Judge

---

[5] Although not listed as an issue on appeal, Appellant argues that "there is no summary judgment evidence of fraud and the Trustee is not entitled to attorneys fees." *See* Appellant's Brief, p. 16. Neither the Memorandum Opinion nor the Final Judgment issued in this Adversary Proceeding includes an award of attorneys fees.